PETER SHEAFF, Com'r,

*v.*

THE PEOPLE *ex rel.* Alfred Colwell.

87    189
137   263
87    189
186   4423
87    189
d91a  1593
87    189
j189  1528

1. HIGHWAY—*no outlet to other roads.* A road laid out by commissioners, under the statute, is a public highway, even though one end of the same terminates against private land, with no outlet. The statute must control against any contrary doctrine of the common law.

2. SAME—*defense to opening.* It is no defense against a proceeding by *mandamus* to compel the commissioners of highways to open a public road established by them, that the same will not be fit for travel until bridges are built requiring a large sum of money, and that there are no funds to build the same. The command to open does not require the road to be put in good order. The question of the utility of the road is not involved in such suit.

3. SAME—*agreement not to open till damages are paid.* Where the damages for right of way for a road are agreed upon, and an order given for the same, and releases executed, the land owner relying on the orders, the commissioners of highways, on *mandamus* against them, will not be allowed to set up a verbal agreement made by them with the owner not to open the road until the damages should be paid, as such agreement is inconsistent with the order establishing the road. Such an agreement can not rest in parol.

4. MANDAMUS — *commissioners of highways as a party.* Commissioners of highways being a *quasi* corporation, the naming of the individuals composing the body in a petition for *mandamus* may be regarded as surplusage. The proceeding is properly brought against them as "the commissioners of highways of the town of ———," naming the town.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. N. C. WARNER, for the appellant.

Messrs. CRAWFORD & MARSHALL, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a petition for a writ of *mandamus* to the commissioners of highways of the town of Scott, in Ogle county, to compel them to open a public road which had previously been laid out by them. Answer was made, hearing had upon proofs, and the prayer of the petition granted, and appeal taken by the commissioners.

The answer sets up various reasons why the writ should not issue.

The road was laid out one mile in length, along the south line of section one, commencing at the south-west corner of section six, and terminating at the south-west corner of section one, in the next range west. No question is made as to the laying out of the road or the regularity of the proceedings in that respect, but the point is made that the road, at its east end, has no outlet, it not opening into any other road, but terminating on private property; hence it is claimed, that as the road is not a thoroughfare, but a *cul de sac*, it is not a public highway, and authorities under the common law are

cited which go in support of the position. It is not to be conceded that that is the doctrine of the common law. *Bateman* v. *Black*, 14 Eng. L. & Eq. 69; *People* v. *Kingman*, 24 N. Y. 559; *Bartlett* v. *City of Bangor*, 67 Me. 460. But however that may be, we do not regard the doctrine as applying to a public road, laid out as such according to the provisions of our statute.

The statute gives to commissioners of highways the power to lay out and establish roads in their respective towns, providing that it shall be done upon petition of not less than twelve freeholders residing near the proposed road, describing it, and the points at which it is to commence and terminate, upon which, the commissioners examine the route and lay out and establish the road, or not, according as, in their judgment, the public interest and convenience may require. The statute requires that the order laying out the road shall declare it to be a public highway. It contains no qualification whatever in the respect of the road being a thoroughfare, only requiring the petition for the road to state the points of commencement and termination, leaving it with the commissioners of highways to determine whether or not the public good requires a road with such *termini*. The road in question has been thus laid out by the commissioners of highways, with such a termination at the east end as it has, and they must necessarily have adjudged the road as it is, to be of public utility, and it is a public highway, because the statute declares it to be such. The statute must control as against any contrary doctrine of the common law. See *The State* v. *Bishop*, 10 Vroom, 226. The road was petitioned for by forty freeholders residing within three miles of it, and was laid out as a public road, the order therefor, at the close, containing the words, " and as so laid out is declared a public highway, of sixty feet wide." There is no indication whatever pertaining to it of its being laid out as a private road.

It is further answered, that the public interest will not be promoted by the opening of the road; that if opened, it would

not be in a condition fit for public use and travel, without first building bridges over a stream of water crossing the road, and over two sloughs crossing the same; that the building of the bridges would require a large expenditure of money; that there are and have been no funds in the hands or control of the commissioners of highways applicable to that purpose; and that the commissioners have the right to exercise a sound discretion as to when the road shall be opened by them, provided they open the same within five years from the time of laying it out.

The command to open the road does not include an order to build the bridges, or to put the road in good condition for public use and travel. It is but to open the road, leaving improvements to be thereafter made, as may be found proper and practicable.

The opening of the road, the removal of the fences from it, would leave it free for passage, so far as that might then be enjoyed. Evidently, and as the proof well enough shows, the freedom of passage over the road in its unimproved state would, to an extent, accommodate the public. The road belongs to the public, and they have the right to the enjoyment of its use, to whatever extent that may be, which may be had from the mere opening of the road.

As to the public utility of the road, that was not a question before the commissioners upon the opening of the road; they had previously determined that, and this question passed from them upon their making the order laying out the road; thereafter it was to be taken that the public accommodation demanded the road should be opened.

As to the exercise of a discretion by the commissioners with respect to the time of opening a road, that was set up in the case of *Hall* v. *The People,* 57 Ill. 307, and it was there said, that while the general rule was otherwise, doubtless a case might arise where it would not be the duty of the commissioners to proceed at once to open the road, but that no such state of facts was there alleged in the return as would authorize the

commissioners to extend the time. We may say the same with respect to the state of facts in the present case.

There were releases in writing, under seal, of their damages, by three land owners, Ginders, Moore and Crosby, and it is alleged that these releases were procured by the commissioners, upon the express promise, made by them to the releasors, that the road should not be opened until their damages were paid; that they have never been paid, and that there is and has been no money in the treasury of the board of highway commissioners with which to pay the same, and that by reason thereof they have no legal right to cause the road to be opened. Each one of these land owners was examined on this subject, and testified that he did not recollect of any such promise being made. One of the commissioners alone, who appears to have been always opposed to the road, testifies to such a promise.

It appears in evidence, that the respective amounts of these damages were agreed upon, and that at the time the releases were executed, orders were given by the commissioners of highways on their treasurer for the respective amounts of their damages to the persons releasing, except in the case of one of them; his order was left, and has remained, in the hands of one of the commissioners.

The statute provides, in respect of such damages, that they may be agreed upon or released, and if not so done, shall be assessed by a jury before the laying out of the road; that in case they are agreed upon or released, the agreement or release shall be in writing, and shall be filed and recorded with the copy of the order establishing the road, in the town clerk's office, and shall be a perpetual bar against such owners, for all further claims for such damages.

We need but to suggest the objections to the admission of this alleged agreement as a reason for not opening the road.

There is the objection of establishing such an agreement by parol, and the want of authority by the commissioners to make any collateral agreement inconsistent with their order estab-

13—87 ILL.

lishing the road, and particularly when not in writing, as required by the statute. The agreement itself is quite unsatisfactorily established, and, especially in view of the testimony of the land owners themselves, it may be considered that they not only did not rely upon any such agreement as to be in hindrance of the opening of the road, but depended upon their orders alone, as in settlement of their damages. This matter is not set up by the land owners themselves, but only by the commissioners of highways as on their account, and there is the conclusive effect which the statute gives to these releases.

We can allow no effect here to this alleged agreement not to open the road until these damages were paid.

It is further objected to the sufficiency of Crosby's release, that he had but a life estate in his land. Under the rule in *Shelly's case*, he took the fee under the provision in the will upon which this question is raised.

It is objected that there was no previous demand made upon the commissioners of highways to open the road, and refusal on their part.

If such demand and refusal be necessary in the case of a public duty such as here, we regard the evidence as sufficiently showing the same.

The petition is against the commissioners of highways of the town of Scott, Ogle county, and D. M. Letts, W. W. Wade and Peter Sheaff as commissioners of highways of the town of Scott, Ogle county. No summons appears. The answer is by the persons above named, as such commissioners.

During the pendency of the proceedings, the first two of the individuals named had ceased to be such commissioners, and two others had become their successors, who were not made parties, and leave was asked and refused to amend the answer showing such change in the commissioners, and several objections of different kinds are taken in these respects to the regularity of the proceedings.

Commissioners of highways are a *quasi* corporation. *Comr's Lancaster* v. *Baumgarten*, 41 Ill. 255.

The duty, the performance of which is sought to be enforced, rests upon no particular set of commissioners, but is obligatory upon such commissioners as a body, without regard to the individuals who compose that body. The naming of the individual commissioners in the petition was entirely surplusage. The whole proceeding might well be against the commissioners of highways of the town, simply, by that name alone, the duty being a corporate duty; and we regard any change of the individual commissioners which took place, and the refusal of the court to pay any regard thereto, as forming no ground of error. *The People* v. *Collins*, 19 Wend. 56; *Village of Glencoe* v. *The People*, 78 Ill. 382.

The peremptory writ was awarded, as it should have been, against the commissioners of highways generally.

Finding no error in the record, the judgment is affirmed.

*Judgment affirmed.*