## The City of Rock Island v. Belle Starkey.

1.  DEDICATION—*Acceptance of an Offer to Dedicate—How Shown.*— Acceptance by a municipality of an offer to dedicate a street may be shown by user, and by repairs and improvements made by public officers at the expense of the municipality, and by an ordinance which recognizes and treats it as a street.

2.  PRACTICE—*Recalling a Witness on Sur-Rebuttal.*—It is not error to refuse to permit a witness to be recalled on sur-rebuttal merely to repeat that to which he has already testified.

3. MUNICIPAL CORPORATIONS—*Duty to Prepare their Cases for Trial.* —It is the duty of a city to prepare its causes for trial regardless of a change of administration.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed October 8, 1900.

C. J. SEARLE, C. B. MARSHALL and JOHN K. SCOTT, attorneys for appellant.

JACKSON & HURST and RICKEL & CROCKER, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Mrs. Belle Starkey brought this action against the city of Rock Island to recover damages for injuries which she claimed to have sustained from a fall on a defective sidewalk on the west side of Thirty-first street in said city. Upon a second trial she recovered a verdict awarding her damages, and a judgment for said damages, and the city of Rock Island prosecutes this appeal therefrom.

1. Appellant claims that the place where this injury occurred had not been accepted as a public street by the city of Rock Island, and it therefore is not responsible for any injuries appellee may have received on that spot. The strip of ground in question was of the ordinary width of a street, and it extended south from Fifth avenue 700 feet to a dead end. It had, however, an alley on each side through which access could be had to other streets. The fact it ceased at a dead end is not inconsistent with its being a public street. (Sheaff v. The People, 87 Ill. 189.) There were two dwelling houses on the east side of the street, and eight or ten or more on the west side. Some thirty-nine years before this accident this strip of ground was opened to public use by the owner of the adjoining lands, one Andrews, and it was for many years called Andrews street. A subsequent owner of the adjoining land built the sidewalk on the west side of the strip. No formal action by

the city council was proven by which it accepted the offer
to dedicate this strip for a street plainly implied by turning
it out to public use as the owner did.   The proof, however,
shows that the public used the strip as a way for public
travel for about thirty-nine years; that from 1880 down to
the time of this injury the street commissioner made repairs
upon the street several times, filling up the places which
had been washed out, and grading it, and obtaining the
grade from the city engineer.   A gutter was built in the
street.   There was proof (though disputed) that it was built
by the city under the direction of the street commissioner.
Water mains were put down in the middle of the street
under the direction of the water committee of the city.   The
city dug the ditch and laid the main and paid for the labor
and water pipes, and the city's superintendent of water
works had charge of digging the ditch and laying the main.
The revised ordinances of the city contained a chapter
entitled " Street Names," a part of the first section of which
was as follows :

" The names of the streets of said city hereinafter men-
tioned running north and south be and are hereby changed,
and in lieu of their present names said streets shall be, and
hereby are designated and named as follows, to wit : *   *   *
Twenty-ninth street: The street now known as Twenty-
ninth street and Columbia street, in Howard's addition,
shall be called Twenty-ninth street.   Thirtieth street: Elm
street shall be called Thirtieth street.   Thirty-first street:
Andrews street and Thirty-first street, in South Park, shall
be called Thirty-first street."

This chapter contained various provisions for numbering
the houses fronting on any street in the city, and for placing
at street corners signs designating the names of the streets.
All the general language of the chapter applied as fully to
this strip of land formerly called Andrews street as to any
other street of the city.   It was held in the Town of Lake
View v. LeBahn, 120 Ill. 92, that an acceptance of a street
may be shown by user by the public, as by travel, or by
acts of public officers in repairing and keeping up the
streets.   In City of Sullivan v. Tichenor, 179 Ill. 97, it was

held that an acceptance of a street as dedicated to the public might be evidenced by user; that no formal act or ceremony was necessary to an acceptance and that it was not necessary that there should be any record of such an act by which the public was invested with the easement. We are of opinion it sufficiently appeared from the evidence in this case that the public had accepted this strip of ground as a public street, and that the city of Rock Island was responsible for the sidewalks thereon. It was said in Village of Marseilles v. Howland, 124 Ill. 547, that an incorporated town was not bound to build a sidewalk upon a public street, but that if one was constructed by an individual and used by the public with the knowledge of the town authorities the law would require the town authorities to remove the walk or assume responsibility for its reasonably safe condition.

2. Appellant argues that the sidewalk where appellee received her injury was not out of repair at that time. There was much proof offered each way upon that question, and it was a proper one for the determination of the jury. The jury have found that it was out of repair, and we see no reasonable ground for disturbing that conclusion.

3. Appellant claims it had no notice of the defective condition of this sidewalk. There was proof tending to show that the sidewalk had been out of repair so long that the city should have ascertained the fact, and also proof that the sidewalk was so constructed and had been down for such a long time that the city should have known that it required inspection and should have inspected it and ascertained its defective condition.

4. Appellant argues that the condition of appellee complained of was not the result of this fall upon the sidewalk. The testimony of all the witnesses who treated or saw appellee at that time supports the verdict of the jury upon that point. Appellee had been subject to serious physical ailment years before this fall, and even if these ailments still existed at the time of her fall, they were much aggravated by the fall, and notwithstanding her impaired physical con-

dition she could recover for such injuries as resulted from the fall.

5. Appellant argues that appellee is feigning paralysis of her left leg. Such is the testimony of several experts who saw her but once, and who attended at the instance of appellant. These experts were contradicted by many witnesses who saw her often or several times and by the physicians who treated her at different times since her fall. While the testimony of these experts unquestionably raises a doubt as to the seriousness of appellee's injuries, yet we are unable to say that the jury erred in finding as they did on this subject, when all the evidence is considered, or that another jury would reach a different conclusion from the same evidence.

6. Complaint is made of many rulings of the court upon the evidence. Most of these relate to the admission of proof of user of Thirty-first street by the public, and of acts of public officers in making repairs and improvements therein, when there had been no proof of any ordinance expressly excepting the strip as a public street. For the reasons already stated, we hold these rulings were correct. One of the plaintiff's witnesses having testified to the laying of a water pipe in Thirty-first street, defendant sought to show, on cross-examination, that it was not uncommon for the witness, when superintendent of the city water works, to lay such pipes for the city on private property. The court properly sustained an objection to this line of cross-examination. It was not germane to the direct examination. If the city had laid pipes at other places across private property, and if that fact had any tendency to rebut plaintiff's case, such matter was independent proof for the defendant, to be offered by it when it came to make its case. Defendant's experts testified that when they made an examination of the plaintiff, they straightened her leg and placed it in a horizontal position, and then removed the support from beneath it, and that plaintiff held her leg there for a little while and then let it down gradually to the floor, and that this demonstrated it was not paralyzed.

In rebuttal plaintiff recalled Dr. Carter, who testified that there is a condition of paralysis in which the leg may momentarily be extended before it falls, and may fall irregularly, that is, gradually, by little jerks. After he had been cross-examined at length, and plaintiff's rebuttal was closed, defendant's counsel asked leave to recall Doctors Eyster and Hollowbush to contradict Dr. Carter. The court refused, and defendant excepted. Doctors Eyster and Hollowbush had been fully examined by defendant upon that subject. Dr. Eyster had testified that plaintiff's ability to hold the limb extended and lower it gradually to the floor showed muscular control of the functions of the limb; that if the limb was paralyzed, the muscles were powerless, and the force of gravity would cause the leg to fall when the support was removed, and that when there was nothing under the leg, and it was kept extended and gradually let down in that way, this was absolute proof that there was no paralysis; and that a paralyzed limb can not be moved. Dr. Hollowbush had testified to the fact of plaintiff's leg remaining extended for a perceptible length of time after the support was removed, and that this showed she had control of the muscles of the leg, or otherwise she never could have held it out in that way or lower it as she did, and that he knew of no form of paralysis that would enable a woman to hold her leg extended without any support and gradually let it fall to the floor. Dr. Carter's testimony was but rebuttal to what these other physicians had already stated. If the court had permitted defendant to recall these physicians upon this subject, it could only have been to again repeat their declaration that the conduct of the plaintiff in retaining her leg for a moment in a horizontal position after the support was removed, and then letting it down again gradually to the floor, was absolute proof that she was not paralyzed, and that there was no form of paralysis where that could be done by the patient. The court did not err in refusing to permit defendant to have this evidence repeated to the jury.

7. Appellant offered many instructions. Those refused,

so far as proper, were embodied in those given. The court was not bound to repeat the same proposition many times. The jury were fully and properly instructed.

8. The judgment here complained of was rendered upon a second trial, there having been a first trial of the cause some months before. Just prior to the commencement of the second trial appellant moved for a continuance, and that motion was heard upon affidavits filed by it, and was denied; and appellant then moved for a postponement of the trial, which was also heard upon affidavits presented, and denied. Bills of exception were then taken preserving the affidavits filed upon said motions and the rulings of the court thereon and exceptions to said rulings. Two reasons were urged both for a continuance and a postponement. The first was that there had recently been a municipal election in the city of Rock Island and a new mayor and city attorney had been elected, and that the city attorney was not prepared to try the cause. It was not shown but that plenty of time had passed after the election and before the trial to have enabled the newly elected city attorney to prepare to try the cause. After the installation of the city attorney several days elapsed before the trial actually began. It was a second trial, and the city must have been fully informed of the proof to be presented. The affidavits showed C. B. Marshall was the former city attorney, and in his affidavit filed in support of the motion to postpone he stated that he was then one of the attorneys in the case, and the record shows he participated in the subsequent trial, so that the city had the benefit of his prior knowledge of the case as fully as if he had remained city attorney. It is apparent from the record that the city was fully and ably defended, and we are unable to say that any injustice was done to it by the refusal to continue or postpone the trial. There were many witnesses, and appellee had necessarily been to great expense to procure the attendance of her witnesses, and she ought not to have been lightly or for trifling reasons deprived of a trial. The city had a continuous existence notwithstanding the change of

control. It was bound to prepare for the second trial. The prior administration had ample time to make such preparations, and there is no showing that it did not do so. The other ground upon which continuance and postponement were sought was the absence of certain witnesses. It was not shown that they had ever been subpœnaed or any effort made to take their depositions or to procure their attendance except the act of sending some telegrams just before the motions for continuance and postponement were made. It also appears that the testimony of the absent witnesses would have been merely cumulative. We are unable to say the court erred in denying the motions.

The judgment is therefore affirmed.