STATE, EX REL. HAMILTON LACKEY, RELATOR, APPELLANT, V. GERING & FT. LARAMIE IRRIGATION DISTRICT ET AL., RESPONDENTS, APPELLEES.

FILED MAY 14, 1935. No. 29498.

*Raymond & Raymond,* for appellant.

*Mothersead & York, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This is a mandamus proceeding in which relator seeks to compel respondents to construct laterals, headgates and other structures, and to deliver to relator water for the irrigation of 58.1 acres of alleged irrigable land. A trial of the issues raised by the alternative writ and return thereto resulted in judgment for respondents. Relator has appealed.

Respondents are Gering & Ft. Laramie Irrigation District and the members of its board of directors. For convenience, the respondent corporation will be referred to as the district.

In the alternative writ it is substantially recited that relator is the owner of 80 acres of land within and a part of the district, of which 70 acres are susceptible of irrigation; that the district for many years has supplied, and is now supplying, water for the irrigation of 11.9 acres of said 80-acre tract; that it is the duty of the respondents to provide laterals and necessary structures for the delivery of water to 58.1 additional acres of relator's irrigable land; that respondents had been requested and had refused to perform this duty.

In their return respondents allege that the district has no appropriation of water for any lands; that it owns no irrigation or diversion works; that the United States government owns the irrigation system by means of which irrigable lands within the district are supplied with water;

that the district operates such government system under contract with the United States; that the latter has designated what portion of the lands within the district is irrigable and has designated that only 11.9 acres of relator's tract are irrigable; that respondents are without authority to make any change in the system of irrigation works or in the extent of the lands to be irrigated; that the irrigation works, owned by the government and operated by the district, are not of sufficient capacity to carry water to other than the lands designated by the United States as irrigable; that the water allocated to relator's land is for only 11.9 acres.

The United States government, in an amended application to the state board of irrigation for the appropriation of water, stated that there would be 120,000 acres to be served under the canal; 30,000 acres lying under other canals. The application also stated that 20 per cent. of lands were thought to be nonirrigable. The application was allowed in January, 1905, with priority dating from September 19, 1904. The record does not disclose whether appropriate steps were taken to complete the appropriation. In surveys made by the United States reclamation service at a later date, it was, in fact, determined that only 107,000 acres, both in Wyoming and Nebraska, of which approximately one-half was in Nebraska, were subject to irrigation, and for this acreage only were the irrigation works constructed by the federal government. In this survey by the reclamation service it was determined that 11.9 acres of the land now owned by relator were irrigable, and such area was so designated on the plat of the government. Until a few days before commencement of this action the legal title to the land now owned by relator was in the United States government.

In 1920 the district entered into a contract with the United States government whereby the district became the fiscal agent of the government for the collection of the revenues of the irrigation project. Pursuant to subsequent legislation by congress, another contract was entered into whereby the district took over the care, oper-

ation and maintenance of all or any part of the project works, meaning thereby the irrigation works, but such taking over was subject to such rules and regulations as the secretary of the interior might prescribe. This contract provides that no title to any of the works shall pass to the district until the United States government has been fully reimbursed for the cost of construction, and further provides that no substantial change in any of the transferred works shall be made by the district without first obtaining written consent of the secretary of the interior. The United States has not been fully reimbursed for cost of construction of the works, and such works are being operated by the district. For the purpose of determining what part of the land within the district was subject to taxation for water and the amount which should be assessed against each tract of land, the United States government furnished the district with farm unit plats, showing the amount of irrigable land in each tract. One of these plats shows the tract now owned by relator and shows that 11.9 acres of the tract are irrigable. Taxes for construction and operation were levied against relator's tract of land for 11.9 acres only. This fact was known to relator when he traded for the homestead entry. He then knew that water was furnished for the irrigation of only 11.9 acres.

An entryman for a reclamation homestead is required to reclaim at least one-half of the irrigable area of the land entered. 43 U. S. C. A. secs. 439, 440. To obtain patent to his land, relator was required to show that he had reclaimed one-half of the irrigable area of the tract. He made this proof and stated under oath that his entry embraced 11.9 acres of irrigable land, and that all of this irrigable area had been cleared, leveled, sufficient lateral constructed and put in proper condition, the lands watered, cultivated, and that nine average crops had been raised thereon under irrigation. Within two weeks after receiving his patent, relator commenced this action.

Relator contends that the United States government was granted an appropriation of waters by the state of Ne-

braska for all the land within the district. This contention cannot be sustained. In order to constitute an appropriation of public waters, it is necessary that there should be an application of water to some useful and beneficial purpose. Filing an application for an appropriation may be a necessary step to obtain the appropriation, but the appropriation is not completed until the water is actually applied to some useful purpose. 67 C. J. 990.

In *Commonwealth Power Co. v. State Board of Irrigation,* 94 Neb. 613, it was said (p. 616) : "Much of appellant's argument is devoted to establishing a proposition which needs no argument, namely, that, in cases arising under that portion of the irrigation act of 1895 which deals with water rights to be acquired thereafter, an appropriation is not perfect and complete until the works are completed and the water is applied to a beneficial use."

In *Farmers Canal Co. v. Frank,* 72 Neb. 136, it was said (p. 154) : "All applicants for a new appropriation made after the passage of the act under the regulations laid down therein must comply with this rule, and complete the appropriation by applying the water to the land before their appropriation is complete, their right is vested, and they are entitled to a certificate." In the instant case, the United States government constructed the irrigation works; water was applied to certain lands which were deemed irrigable, and only 11.9 acres of the land owned by relator were supplied with water. It follows that there has been no appropriation by the government for any part of the lands owned by relator other than 11.9 acres.

In *Kersenbrock v. Boyes,* 95 Neb. 407, this rule is announced: That an applicant for an appropriation of water has no more than ten years in which to comply with the statutory condition for acquiring such an appropriation. In the instant case more than ten years has elapsed since the United States government made its application. It has acquired an appropriation for only 11.9 acres of land in the tract now owned by relator. A landowner in an irrigation district may not by mandamus compel the district to supply his land with water when there exists

no valid appropriation of water for such land for irrigation purposes.

Relator appears to contend that all the land within the boundaries of the district is subject to irrigation, and that, therefore, he is entitled to have his entire tract irrigated. His contention that only 70 acres of his 80-acre tract are irrigable refutes the proposition. There are approximately 71,000 acres of land within the boundaries of the district. It is conceded that a considerable percentage thereof is not irrigable as a practicable proposition. In fact, only about 55,000 acres within the district have been irrigated. It may be said that any of the land is irrigable by pumping the water to a higher level, but such is not the usual meaning of the term "irrigable."

The petition for the formation of the district, embracing about 71,000 acres, after stating the boundaries thereof, contains this recital: "It being the intention to include within the said district all lands lying within the state of Nebraska above the Mitchell and Gering canals and below the Fort Laramie canal of the reclamation service as the same may be finally located and constructed." In the notice of election, given to the people voting in the district, it is stated: "Said descriptions and the boundary lines of said district also include those lands which are not susceptible of irrigation, either because of their high situation or from their low, wet and otherwise nonirrigable character and are not affected by this organization." For practical purposes, only such lands as were irrigable were considered a part of the district, although other lands not irrigable may have been included within the boundaries of the district. As above stated, the government constructed its irrigation works with a view and of a capacity to irrigate only approximately 55,000 acres, being the total acreage within the district deemed by the government to be irrigable. No appropriation of water has been finally made by the government for any greater area.

The evidence discloses that, in the operation of the works, the district has at its command a supply of water for only 55,000 acres, which it is now irrigating, and has

not a sufficient appropriation of water to apply to other lands, within the boundaries of the district, than those to which water has been applied. Since the district does not have at its command for distribution a water supply greater than it obtained by taking over and operating the government works, it cannot be compelled to furnish water to any greater area of land.

Mandamus will not lie to compel an irrigation district to supply water to land in the district, where its only supply of water for irrigation purposes is from irrigation works, owned by the United States government and operated by the district under contract with the government, and where the entire appropriation of water for the district has been previously allocated to other lands in the district entitled thereto.

Evidence on behalf of relator tends to prove that, in addition to 11.9 acres irrigated, there are about 35 additional acres that might be irrigated. The evidence upon this question is in conflict. Mandamus is classed as a law action. There was a general finding by the court for respondents. It is a rule that a finding of the trial court in a mandamus proceeding, based on conflicting evidence, will not be disturbed on appeal unless clearly wrong.

Under the pleadings and facts in this case, relator was not entitled to a peremptory writ of mandamus. The judgment of the district court denying the writ is

AFFIRMED.