STATE, EX. REL. WALTER R. JOHNSON, ATTORNEY GENERAL,
ET AL., RELATORS, V. BEN A. GOBLE, SHERIFF OF GAGE
COUNTY, NEBRASKA, RESPONDENT.

285 N. W. 569

FILED MAY 5, 1939.  No. 30687.

*Walter R. Johnson, Attorney General, Rush C. Clarke*
and *Arnold J. Van Borkum,* for relators.

*Wear, Boland & Nye, amici curiæ.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER
and JOHNSEN, JJ., and KROGER, District Judge.

SIMMONS, C. J.

This is an original application in this court for a per-
emptory writ of mandamus, directing the sheriff of Gage
county to arrest one George M. Hauser and one Leo S.
Holmes, hereinafter referred to as the defendants, pur-
suant to a warrant issued out of the county court of
Gage county.

The application alleges that, prior to March 10, 1939,

complaint was filed in the municipal court of the city of Omaha, Douglas county, Nebraska, charging the defendants with the commission of a felony, and the defendants were arrested by warrants issued thereon.

On March 10, 1939, a complaint was filed in the county court of Gage county by the county attorney, charging the defendants with the commission of a felony in that county, and a warrant was issued, commanding the respondent to arrest said defendants and bring them before said court. Said warrant is still in full force and effect.

The charges in the two counties are based upon alleged violations of different provisions of the statutes.

The relators allege that the defendants had fled from justice in Gage county and were in Douglas county when the Gage county warrant was issued.

A preliminary hearing on the Douglas county complaints was had on March 20, 1939. The defendants were held to trial in the district court for that county, and were committed to jail. The action is now pending in the district court for Douglas county. No date of trial has been fixed. The trial of the action will not take place until June, and probably not until October, 1939.

The defendants filed motions in the Douglas county actions, reciting that it had been stated that complaints would be filed against them in other counties; that the complaint had been filed in Gage county; that the sheriff of Gage county had stated he would arrest them and transfer them to jail in Gage county; that the offense is bailable; that the threatened action would preclude them from obtaining bail; that the Douglas county courts have assumed jurisdiction over them, and that, by reason thereof, they are not subject to arrest under complaint issued in any other court so long as the Douglas county actions are pending. The defendants prayed for an order, which was granted by the district court on March 21, 1939, enjoining the sheriff of Douglas county, his deputies or agents, and the police force from arresting, or aiding in the arrest of, the defendants for the purpose of, or preliminary to,

their removal to any other county to answer criminal complaints during the pendency of the Douglas county cause; and ordering that the defendants be not removed from the jurisdiction of the district court for Douglas county, during the pendency of the action there, by any sheriff or peace officer, who, with knowledge of the order, might come into the county for that purpose. The district court for Douglas county admitted the defendants to bail, and they are now at liberty thereunder. The district court for Douglas county further ordered that its order of March 21, 1939, should remain in force "during the pendency of this cause of action and until same is finally disposed of if the defendants are at liberty under bail approved by this court to the same effect as if they remained in jail in the custody of the sheriff of Douglas county."

This court issued an alternative writ. The respondent answered, setting out generally the facts recited herein; that respondent desires to act lawfully and perform his duties in a proper manner; that he is willing and able to arrest the defendants; and that he is uncertain as to his powers and duties.

The relators moved for judgment on the pleadings.

Brief of *amici curiæ* was filed herein "at the suggestion of Honorable Willis G. Sears, presiding judge of the district court of Douglas county." This court permitted oral argument by the *amici curiæ*.

The primary contention of the *amici curiæ*, in support of the order of the district court, is that a court which has a person charged with crime in its custody has exclusive custody and jurisdiction over such person until his guilt or innocence is determined, and when accused persons are at liberty under bail, the dominion of the sureties is a continuance of the original imprisonment.

This case does not present a question of a conflict in the jurisdictions of two sovereignties. Only one sovereignty is involved—that of the state of Nebraska. A situation where two prosecutions are pending in different courts of concurrent jurisdiction for the commission of a single

offense is not involved. Here separate offenses against the laws of the same sovereignty are charged in different counties.

The defendants are not being tried at this time in Douglas county, and it is apparent that they will not be tried for several months. In the meantime, their presence in court in Douglas county is not required for any purpose in connection with their trial for the offenses with which they there stand charged.

The effect of the order of the district court for Douglas county is to grant to the defendants immunity from prosecution for any and all offenses against the laws of this state heretofore or hereafter committed anywhere in Nebraska outside of Douglas county, until the final determination of the charges there pending.

If the contention of *amici curiæ* is sound, then the enforcement of the criminal law in 92 of Nebraska's 93 counties would be suspended and not a step could be taken toward the effective prosecution of the defendants in counties other than Douglas, even though they were charged with the violation of every law of this state.

Persons who commit acts, in one or more of the several counties in this state, subjecting themselves to charges and arrest under the criminal statutes, must anticipate that charges, arrest, and, where probable cause is shown, trial will follow. Persons so accused have the right, which the courts will protect, to a full and fair trial according to the law of the sovereignty where tried. Persons so accused do not have the right to use the power of the courts to avoid arrest and trial, nor to hinder and delay the enforcement of the laws. Courts should assist, not obstruct, officers of the law in the performance of their duties. Defendants cannot, of course, be tried in two places at the same time. The courts will protect their right to prepare their defense fully, and to be present at every stage of their trial. This order of the district court for Douglas county does not protect rights; it grants immunities.

With the exception of certain crimes, prosecution is

barred by statute (Comp. St. 1929, sec. 29-110) unless brought within the time limited by the act. It is possible that the present prosecution of the defendants in Douglas county might not become final until the time fixed as a limit for prosecution in other counties on other charges has passed.

Delay is often an effective defense in criminal trials. The assurance of prompt trial and punishment, where guilt is established, is a deterrent to crime. Knowledge that trial and punishment for crime will be delayed, if not escaped, encourages the commission of offenses. Prompt trial and sure punishment for crime is the policy of the law. Courts should act to aid the realization of that policy.

There are few adjudicated cases dealing with the precise question here presented. The realtors cite *Ex parte Vogler*, 110 Tex. Cr. Rep. 579, 9 S. W. (2d) 733, 62 A. L. R. 456, where a person released on bond, pending hearing on habeas corpus, was held not immune from arrest and prosecution for another offense. The court in that case stated:

"The fact that Jackie Miller was taken in custody upon a warrant from the health department, and was on application for writ of habeas corpus released by the district judge upon bail, pending hearing of the application and decision therein as to whether she was an infected person and a menace to public health, did not render her immune from arrest and prosecution for an offense against the penal law of the state, and the fact of the arrest did not *per se* render the arresting officer in contempt of court. * * * There was no attempt by the arrest to withdraw her from control of the district court, or to interfere with the hearing to be held on the writ of habeas corpus. The proceeding in the district court was in no manner impeded or delayed. * * *

"We have examined the authorities cited in the motion as well as others, and have found none on facts such as those before us, or on facts demanding the application of any

analogous principle, which hold that one on bond in a pending habeas corpus case, who has theretofore or does thereafter violate the law in such manner as that the question of the violation *vel non* is not involved in, or connected with, or affected by the matters at issue in the pending habeas corpus hearing, may not be properly arrested by an officer merely because he knows of the pending proceeding. Such holding, in our opinion, would be little short of monstrous. To hold that one merely detained by health officers, and who may be at large on bail pending a habeas corpus hearing set weeks later, is thereby privileged from arrest for murders committed, thefts perpetrated, ravishments done, or any other violation of law, merely because the arresting officer had knowledge of such pending habeas corpus proceedings would make for incredible confusion and disorder. If the contention thus made be sustained, then habeas corpus writs might be sued out, and that fact published, so that all officers would have knowledge thereof, and the hearing thereon might be purposely delayed, and bond made so that forsooth the parties might thereafter commit wholesale crime, extending over a period of time, and be privileged from arrest."

In *In re Popejoy*, 26 Colo. 32, 55 Pac. 1083, Popejoy was committed to the county jail of Arapahoe county for contempt by reason of his failure to pay a judgment against him for his wife's separate manitenance. Popejoy was arrested by the sheriff of Arapahoe county in El Paso county under the warrant of commitment. Popejoy applied for a writ of habeas corpus, and among other facts recited that, at the time of his arrest under the warrant of commitment, he was under bond to appear before a justice of the peace of El Paso county, to answer a criminal charge, and that therefore he could not be arrested under warrant issued by the district court for Arapahoe county. On that proposition, the court said:

"At the time of the arrest of petitioner under the commitment issued by the district court, he had not then been committed to any prison, nor was he in the custody of any

officer or other person, upon any criminal or supposed criminal matter. On the contrary, he was out on bail; conditioned for his appearance before a justice of the peace of El Paso county, to answer to a criminal charge there pending; but that did not exempt him from arrest or removal by virtue of the commitment under which he is now held, and from which he seeks to be released, and the provisions of section 2115, Mills' Ann. St., which provide that a person being committed to prison or in custody of an officer upon a criminal charge, shall not be removed from such prison or custody into any other prison or custody, unless it be by habeas corpus or some other legal writ, are not applicable, because, being out on bail, petitioner was not committed to prison, or in the custody of any officer."

*Amici curiæ* cite *In re Beavers,* 125 Fed. 988. In that case, Beavers was at liberty on bail subject to answer an indictment in the federal courts of New York. He was arrested under a warrant issued upon the indictment of a District of Columbia court. It was held that: "A court which has in its custody a person charged with a crime has exclusive custody and jurisdiction until the question of his guilt or innocence is determined, and, if he is found guilty, until the period of imprisonment has expired." The opinion rests upon citations to *Taylor v. Taintor,* 16 Wall. 366, 21 L. Ed. 287. In that case the court stated:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted: and this rule applies alike in both civil and criminal cases. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is— unless there is some provision to the contrary—exclusive in effect until it has wrought its function."

In the annotation to *Ex parte Vogler, supra,* reference is made to *In re Beavers, supra,* and this statement made: "It is to be noted that here the second arrest was not

made on an indictment issued in the same jurisdiction as the first arrest, which probably accounts for the difference in the holdings in these two cases."

See, also, *Ponzi v. Fessenden,* 258 U. S. 254, 42 S. Ct. 309.

In *Peckham v. Henkel,* 216 U. S. 483, 30 S. Ct. 255, Peckham was indicted in the District of Columbia in 1905. A warrant was issued in the northern district of New York upon a complaint filed with the commissioner for his removal to the District of Columbia for trial. Peckham applied for a writ of habeas corpus, alleging that his detention was illegal. The trial court denied the writ, an appeal was taken, and pending the appeal, the order of removal was stayed. In 1908, Peckham was again indicted in the District of Columbia for similar, but not the same, offenses. Proceedings were brought for his removal to answer the 1908 charges, the stay order on the 1905 indictment being still in force. It was contended that, while the 1905 removal proceedings were pending, Peckham could not be removed under the 1908 proceedings without disregarding the jurisdiction which had attached by virtue of the 1905 effort to remove him. The court stated:

"That. Peckham is under bond to appear and comply with the order of removal made by Judge Ray, and, therefore, constructively in the custody of his sureties, must be conceded. But if the performance of the condition of that bail bond is rendered impossible by his removal in these subsequent proceedings, at the instance of the United States, the effect may be to exonerate his sureties. *Taylor v. Taintor,* 16 Wall. 366, 371; *Beavers v. Haubert,* 198 U. S. 77, 85. But it is said that removal to the District of Columbia is forbidden under Judge Ray's order of January 10, 1906, and that a removal under the order made by the commissioner in the proceedings now under review will invalidate the order of Judge Ray.

"This is a fanciful claim. He will not be removed under or in pursuance of the original order of removal, execution of which has been stayed, but under an order made in an

altogether distinct and subsequent proceeding to answer distinct offenses.

"Finally, it is said that the jurisdiction of the court for the northern district of New York, having attached to the person of appellant, must be respected as exclusive until its jurisdiction is exhausted.

"The rule is one of comity only, and has a wide application in civil cases, but a limited one in criminal cases. See *In re Johnson*, 167 U. S. 120, 125, and *Beavers v. Haubert*, 198 U. S. 77, 84. But when, as here, the subsequent proceedings for the removal of appellant are to answer indictments later found for other and distinct offenses, the question is quite a different one, for the 'cases' are not the same. That they are 'cases' against the same offender is not of itself sufficient to constitute the second proceedings void as an unlawful interference with the jurisdiction of the district court for the northern district of New York."

In *Morse v. United States*, 267 U. S. 80, 45 S. Ct. 209, Morse and another were on bail to answer indictments in the District of Columbia. On the day before their case was to be tried, they were passing through New York on their way to Washington for trial. They were arrested and taken from the train in New York on a warrant issued on federal indictments found in New York. Their arrest prevented their appearance at the time their trial was set in the District of Columbia. Writs of habeas corpus were denied, the court stating:

"It is contended that the arrest of appellants in New York, while en route to Washington for trial, under the circumstances stated, was arbitrary, unauthorized and illegal, and constituted a violation of the due process of law clause of the Fifth Amendment. The contention is plainly without merit. The principle that when the jurisdiction of a court has attached, it must be respected as exclusive until exhausted, is a rule of comity, having a wide application in civil cases but a limited one in criminal cases. *Peckham v. Henkel*, 216 U. S. 483, 486. The mutual forbearance which two federal courts having coordinate juris-

diction should exercise to prevent conflicts by avoiding interferences with the process of each other, has 'perhaps no higher sanction than the utility which comes from concord.' *Covell v. Heyman,* 111 U. S. 176, 182. But this aside, if there be a violation of the rule of comity here, it primarily concerns only the courts or the sovereignty which is their common superior, and cannot avail the appellants indicted for crimes in the different jurisdictions."

If as a result of the Gage county charges, the defendants are held for trial there, the question of where and when the defendants shall be tried is a matter to be determined by the trial courts involved. We assume that the courts will have no difficulty in that determination. Should difficulty arise, upon a proper showing therefor, the rule-making power of this court may be exercised in the matter.

Section 29-205, Comp. St. 1929, provides that, where a person accused of a crime absconds or removes from the county where the crime is charged, "it shall be lawful" for any sheriff to apprehend the accused and remove him to the county where the crime is charged.

Section 29-1702, Comp. St. 1929, provides that, where an accused party resides out of the county where the charges are brought, warrant may issue directed to the sheriff of the county where the accused resides, or may be found, and "it shall be the duty of such officer to arrest the accused and convey him to the county from which such writ was issued."

*Amici curiæ* argue that section 29-1702, *supra,* is mandatory, that section 29-205, *supra,* is permissive, and, hence, that it is not the mandatory duty of the sheriff of Gage county to go into Douglas county and make the arrest, and that a writ of mandamus should not issue.

The argument is without merit. To so construe that, or other sections of the statutes relative to the arrest of persons accused of crime, would be to leave the matter of obeying an order for the arrest of accused persons entirely within the whim and caprice of the many officers of the courts of this state.

Section 29-404, Comp. St. 1929, makes it the duty of a magistrate to issue a warrant for the arrest of an accused person, if he shall have reasonable grounds to believe the offense charged has been committed. Can it be the duty of the magistrate to issue the warrant and not be the duty of the sheriff or other officer to serve it?

Section 26-1410, Comp. St. 1929, provides: "It shall be the duty of the sheriff * * * to apprehend and arrest all criminals * * * and to perform all other duties pertaining to the office of sheriff or enjoined upon him by law."

Section 26-1401, Comp. St. 1929, provides that it shall be "the duty of the sheriff to serve or otherwise execute, according to law, and return, writs or other legal process issued by lawful authority, and to him directed or committed."

Section 26-1402, Comp. St. 1929, provides: "His disobedience of the command of any such process is a contempt of the court from which it was issued, and may be punished by the same accordingly."

Sections 28-720 and 28-722, Comp. St. 1929, provide that any warrant legally issued shall be served immediately, and, subject to the provisions of the statute, the officer who neglects or delays serving a warrant is subject to fine, imprisonment and removal from office.

"It is the general rule that an officer to whom a lawful warrant for the apprehension of one accused of an offense has been directed must proceed with reasonable diligence and do all in his power faithfully to execute the warrant." 5 C. J. 390. See 6 C. J. S. 575; *Malone v. Carey,* 17 Cal. App. (2d) 505, 62 Pac. (2d) 166.

"The writ of mandamus may be issued * * * to compel the performance of an act which the law specifically enjoins as a duty." Comp. St. 1929, sec. 20-2156.

In *State v. Anderson,* 122 Neb. 738, 241 N. W. 545, this court stated: " 'To warrant the issue of mandamus against an officer to compel him to act, (1) the duty must be imposed upon him by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty to act must be clear.' *State v. Barstler, ante,* p. 167."

In this case, the duty to make the arrest, as commanded in the warrant, is imposed upon the respondent by law; it existed at the time the writ of mandamus was applied for, and the duty of the respondent to act is clear. It is the duty of the respondent to make the arrest as commanded by the warrant. It is the duty of the district court for Douglas county and the peace officers within and for said county to give him every proper assistance in the performance of that duty.

The peremptory writ prayed for is granted.

WRIT ALLOWED.