For the reasons heretofore stated, the judgment of the district court is affirmed.

AFFIRMED.

STATE EX REL. FRANCIS E. DRAPER ET AL., RELATORS AND APPELLANTS, V. HENRY FREESE ET AL., RESPONDENTS AND APPELLEES.

22 N. W. 2d 556

FILED APRIL 10, 1946.  No. 32049.

J. A. *Hayward* and *Homer L. Kyle,* for appellants.

E. A; *Wunder, Frank M. Rain,* and *A. J. Denney,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Francis E. Draper, Eleanor Hyland, and Mary Ryan, as relators, brought this action in the district court for Jefferson County against Henry Freese, Fred Deffer, and Samuel C. Hutchinson, the county commissioners of Jefferson County, as respondents.

The purpose of the action is set forth in the prayer of the relator's petition as follows: " * * * that an alternative writ of mandamus be issued herein requiring that the respondents reopen and repair said public highway between Section Twelve in Township One, Range Two and Section Seven, Township One, Range Three in Jefferson County, Nebraska, and running along the section line dividing said two sections; that they erect a suitable bridge across the channel of Rose Creek at the point where it intersects said section line; that they be required to keep and maintain said highway open and in proper repair for use and travel by the public, as required by law, * * * and for such other, further, and different relief as justice and equity may require."

From an order denying the writ and dismissing their

petition, after motion for new trial had been overruled, the relators appeal.

In this opinion the parties will be referred to as the relators and respondents.

In July 1875, a petition was filed with the county commissioners of Jefferson County to establish a road located in said county described as follows: " * * * commencing at A point on the Kansas line Eighty (80) Rods East of Range Two (2) East Thence running North two Miles, thence West one quarter mile to the Township line, thence North along said Township line to a point where it crosses Rose Creek, thence down the right bank of said Rose Creek where it again intersects said Township line, thence North along said line to the NorthEast corner of Town one Range Two East thence West along the Township line until it intersects Road 31."

Thereafter the board appointed a commissioner " * * * to view, and, if in his opinion the public good requires, to locate the Road * * * ." On October 23, 1875, the commissioner appointed filed his report that the public good required the road and proceeded to lay out, mark and plat the same and for that purpose employed a surveyor whose plat and field notes were included with the report. It appears that when the road reached Rose Creek on the section line between section 12, township 1, range 2, and section 7, township 1, range 3, that because the creek meandered along the section line some deviation was made for the purpose of avoiding that condition and thereby facilitated the crossing of this creek. No part of this road has ever been vacated.

The relators are the owners of lands in section 7, township 1, range 3, and section 12, township 1, range 2, which are traversed by Rose Creek from a southwesterly to northeasterly direction thereby leaving approximately 175 acres on the north and 140 acres on the south side thereof. They inherited this land from their grandfather, Edward Ryan, who became the owner thereof in 1902.

This road, from the south section line of sections 7 and

12 to the north side of Rose Creek, where the road coming down from the north turns east toward Endicott, was never opened nor has any work ever been done thereon at public expense. However, in the beginning there was some travel by the public of a trail which crossed Rose Creek by means of a ford at a place some distance east of the section line. Later the same method of travel and crossing was at a point some distance west of the section line. This continued until about 1915 or 1916 when Edward Ryan constructed and maintained a substantial bridge across the creek at a point about 80 rods west of the section line. The public was permitted to use this bridge and made some use thereof by going through the owner's gates and across his premises. This continued until 1941 when the bridge washed out and since that time there has been no travel along this route.

The respondents seek to question the sufficiency of the proceedings establishing the road and the relators, under the facts herein established, seek to apply the following rule as announced in Lydick v. State, 61 Neb. 309, 85 N. W. 70: "Where a public road has been established by proceedings under the statute and opened and traveled by the public for more than ten years, the public thereby acquires an easement therein, and the court will not examine the original proceedings for the laying out of the road and determine whether or not they were valid."

We think the facts of this case bring it within the case of Peterson v. Fisher, 71 Neb. 238, 98 N. W. 660, wherein the court in discussing the facts said: "The evidence in this case shows that, while both east and west of the line between sections 11 and 14 the road was freely traveled by the public, yet it further shows that the main line of travel was turned aside on the east line of these sections, was diverted to the north, thence westward across section 11, thence southward after having passed over said section to a continuation of the original line running east and west. The plaintiff testifies that he had a gate at the east line of said section, and that a few persons came through

the gate, passed along between the sections, thence southward to his house, but there is no evidence that any public work was ever done upon, or that the public in general ever traveled on, the line between sections 11 and 14, and there is no evidence of travel between these sections for as long a period as 10 years. This being the case, no prescriptive right was acquired by the public as against the owners of the land in said sections, and, since the plaintiff in this case never recognized any right of the public to pass over his premises, it is apparent that, unless the original proceedings were valid, no public highway exists over the land of the plaintiff at the place in dispute. Gehris v. Fuhrman, 68 Neb. 325; Engle v. Hunt, 50 Neb. 358; Hill v. McGinnis, 64 Neb. 187." Therein we held: "If the public has acquired no right by prescription or dedication to a way across the land of an individual, the court may examine the proceedings by which it was attempted to lay out a highway across the same, to ascertain whether or not the county board had jurisdiction to act, and the lapse of time alone will not supply a jurisdictional defect in the proceedings."

The respondents contend that under our decision in Rosenbery v. Tibke, 88 Neb. 51, 128 N. W. 647, the affidavit as to where the notices were posted does not show a compliance with the statutory requirement. The pertinent part of the statute is as follows: " * * * by posting a notice on the court house door, and at three other public places in the vicinity of the road sought to be located, * * *." § 19, ch. 47, R. S. 1866.

In Rosenbery v. Tibke, *supra*, the affidavit as to where the notices were posted is as follows: "One on the front door of the court house and three in the vicinity of the proposed road." The opinion goes on to state: "Where? On a back fence, where no one would ever see them? Were they all posted side by side or in three different places? The statute required that they be posted in three 'public places' in the vicinity of the road sought to be located."

Here the affidavit with reference to where the notices

were published is as follows: " * * * did, * * * post notices, * * * on the door of the Court House in Fairbury * * *, and at three other public places in the vicinity of the Road * * *." Answering the question asked in Rosenbery v. Tibke, *supra,* "Where?" the affidavit shows they were posted in three other public places in the vicinity of the road. Not in private places nor in one place but in public places, and, besides the one on the courthouse door, they were posted at three other public places in the vicinity of the road.

As stated in 46 C. J., Notice, § 75, p. 560: "When an affidavit of posting is a permitted method of proof, the affidavit of the officer authorized to post the notice may be sufficient, but the affidavit must state the facts required by statute to be contained therein. When a statute requires an affidavit to show that the notice was posted in a public place, it is not necessary to specify the place, if the affidavit states that the notice was posted and that the place was conspicuous." As stated in McDonald v. Road District, 292 Ill. 386, 127 N. E. 29: "An examination of the record as to both the preliminary and the final hearings discloses concerning the notices given, that the same were posted more than ten days previous to the date of the meeting, in the following manner: 'By posting notices in three of the most public places in said road district in the vicinity of the road proposed in the petition, the said notices so posted having been in the exact words and figures described.' The record also sets out the form of notice, which notice complies with the law in every particular. The posting of these notices is a positive requirement of the statute and must be complied with, and the question is whether or not there is in the record sufficient evidence of compliance. Both the final and preliminary orders filed with the clerk of the road district particularly specify that notices were posted in three of the most public places in the district in the vicinity of the road proposed in the petition, and a copy of the notice is made part of that record. It was held in Shinkle v. Magill, supra, where this

question arose on a similar record, that the statement in the record that the notices were posted in three of the most public places of the district constituted sufficient proof of that fact. The same rule is laid down in Frizell v. Rogers, 82 Ill. 109. We are of the opinion that the record is sufficient on the question of notice, and the contention of the plaintiff in error can not prevail."

We find that the affidavit as to where the notices were posted shows a compliance with the statutory requirements. An examination of the entire proceedings shows a full compliance with the statutory requirement and that the road was established as shown by the report of the commissioner.

Under the provisions of section 3, Laws 1867, p. 45, the road established became an open road and the statute provides as follows: " * * * the Road Supervisor shall proceed to remove all obstructions from the same within six months from the passage of this act; and all roads hereafter located, shall, after the expiration of six months, be deemed and held to be open roads, and the Supervisor shall, or any other persons may, proceed to remove obstructions from the same; * * *." In 1879, the Legislature provided by section 29, Laws 1879, ch. 47, p. 125: "After the road has been finally established, the plat and field notes must be recorded by the county clerk, and the road overseers of the district through which such road passes shall be directed by the clerk to have the same opened and worked; * * *." Our present statute provides that when roads have been established "The clerk must direct the road overseers to have the same opened and worked; * * * ." § 39-116, R. S. 1943. And under section 39-103, R. S. 1943, the commissioners are directed to see that the laws in relation thereto are carried out.

With reference to the statutory duty to maintain and keep in repair highways and bridges, we have said in State ex rel. Enerson v. County Commissioners, 102 Neb. 199, 166 N. W. 554: "Relator is seeking to coerce performance of the board's statutory duty to keep the highway, includ-

ing the bridge, in a proper condition for travel. * * * The duty of a county board to repair or restore a bridge which is part of a public highway in general use may be enforced by mandamus. Dutton v. State, 42 Neb. 804; Iske v. State, 72 Neb. 278; State v. Board of Commissioners, 80 Ind. 478. In another form the rule is: 'Mandamus is generally recognized as a proper remedy to compel public officers to perform their duty to take care of and keep in repair public highways and bridges and the like, whenever the necessity for its exercise is so apparent and obvious that the refusal to act is the result of a determination not to discharge a plain duty.' 18 R. C. L., p. 241, § 165."

While we find no decisions of our court on the question of the duty to open and work a road once it has been established, we think there is no difference between that and the statutory duty to maintain.

As stated in 38 C. J., Mandamus, § 371, p. 751: "Where a highway has been legally established, mandamus will lie to compel the proper authorities to open it." Also, in 34 Am. Jur., Mandamus, § 192, p. 965: "But where a highway or street has been duly and legally laid out by highway officials, the ministerial duty imposed upon them of opening it may be enforced by mandamus."

"The duty of the overseer to open, clear out and make the road, is imposed, not by an order of the township committee, but by an act of the Legislature." "A mandamus will be granted against an overseer of the highway to compel him to open, clear out and make a certain road within the limit and division assigned to him by the township committee." State v. Holliday, 3 Halst. 205, 8 N. J. Law 252.

"It was held by this court, in the case of The State v. Holliday, 3 Halst. 205, after full argument and consideration, that a mandamus may properly be issued to an overseer of roads, commanding him to work and open a new road; * * *." State v. Elkinton, 30 N. J. Law 335.

"If the common council neglect to proceed and open the street, the court may grant a mandamus to compel them to proceed, when applied to by any person interested in the

proposed improvement." People ex rel. Green v. Common Council of Syracuse, 20 How. Pr. (N. Y.) 491.

"The demurrer to the writ confesses that this duty has not been performed by appellant. Mandamus is the appropriate remedy to compel the performance of the statutory duties of township trustees with respect to the opening of established highways, and the allegations of the alternative writ of mandate in this case, taken as true, are sufficient to require the performance of the duties enjoined upon appellant as trustee, by the provisions of the statute above quoted, * * *." Welch v. State ex rel. Beauchamp, 164 Ind. 104, 72 N. E. 1043.

See, also, Sheaff v. The People ex rel. Colwell, 87 Ill. 189, 29 Am. R. 49; Richards v. County Commissioners, 120 Mass. 401; In the Matter of the Mandamus to the Commissioners of Dauphin County, 1 Pearson (Pa.) 144; Hall v. The People ex rel. Rogers, 57 Ill. 307; Romsdahl v. Town of Long Lake, 175 Minn. 34, 220 N. W. 166; State ex rel. Cornelius v. McClanahan, 221 Mo. App. 399, 278 S. W. 88.

The evidence shows that Rose Creek meanders down the section line and that it would be extremely difficult and very expensive to cross it on the section line. However, the commissioner's report together with the plat and field notes show a deviation from the section line apparently to avoid that very condition. As we have said in Richardson v. Frontier County, 94 Neb. 27, 142 N. W. 528: "It is not essential that a public road be laid out upon the exact line prayed for in the petition, and slight variations in order to procure a more practicable route are permissible."

For the reasons stated the writ should have been granted and the respondents directed to see that the proper parties proceed to open and work the road to make it usable by the public.

REVERSED WITH DIRECTIONS.