STATE OF NEBRASKA EX REL. WILLIAM GOOSSEN ET AL., APPELLANTS, V. BOARD OF SUPERVISORS OF GAGE COUNTY, NEBRASKA, ET AL., APPELLEES.

251 N. W. 2d 655

Filed March 16, 1977. No. 40759.

Fredrick L. Swartz and James H. Porter, for appellants.

Everson, Noble, Wullschleger, Sutter & Fischer, for appellees.

Heard before SPENCER, NEWTON, and BRODKEY, JJ., and HASTINGS, District Judge, and KUNS, Retired District Judge.

KUNS, Retired District Judge.

This is an application for a writ of mandamus against the Board of Supervisors of Gage County, Nebraska, and the individual members thereof as respondents. The action was brought on the relation of seven landowners and residents to compel the respondents to rebuild a bridge on a county highway across the Big Blue River. An alternative writ was issued and answered by the respondents. When the case was tried, the court dissolved the alternative

writ and dismissed the action. The relators appeal. We affirm the judgment of the trial court.

The record, although voluminous, discloses no controverted matters of fact. The highway in question is a farm-to-market graveled road, originally established on July 27, 1880, on the boundary between Rockford and Riverside townships in Gage County, Nebraska. A pony truss bridge, known as the Humpback Bridge, was constructed across the Big Blue River in the year 1900 or thereabouts. Both the highway and the bridge have been in continuous use since the dates mentioned. The posted capacity of the bridge was 3 tons. It had been utilized by persons living or having business in the neighborhood for the following purposes: The movement of farm equipment; the hauling of farm produce and supplies; the operation of school bus and mail delivery routes; the answering of fire alarms by the rural fire department; the trucking of crushed rock; and general passenger car travel. Much of the traffic other than passenger cars involved loads substantially in excess of the posted limit of the bridge. In October 1973, a severe flood of the Big Blue River washed out the approaches to the bridge and damaged the main structure thereof. The same flood caused substantial damage to 30 other bridges of more than 1,427 bridges in the county and washed out 26 miles of county highways. The county engineer thereupon barricaded the highway on each side of Humpback Bridge and posted notices that it was closed. Public use of the portions of the highway remaining open has continued. The relators by petition and personal appearance at board meetings have urged the restoration of Humpback Bridge.

In November 1973, an inspection was made by a damage survey team of the Federal Disaster Assistance Administration. The report thereof showed that the amount of damage caused by the flood was

the amount of $15,598 and that a grant of such amount should be made available either for the repair or reconstruction in lieu of repair, if Gage County made application therefor. After receiving opinions from both the county engineer and a consulting engineer that the bridge was structurally obsolete, that it would not be feasible to rebuild it to current safety standards, and that no amount of repair could make it strong enough for a load limit of more than 4 tons, the respondents, on December 14, 1973, voted to replace Humpback Bridge with a new structure at a cost of $200,000 provided a federal disaster grant of $160,000 could be secured. The record is silent as to any steps taken to carry out this decision, but apparently the desired grant was never obtained. At a meeting held April 5, 1974, the respondents voted to dismantle Humpback Bridge, as being unfit for repair; and county employees dismantled and removed the bridge on April 8 and 9, 1974. A new 15-ton capacity bridge is now being constructed across the Big Blue River at a site 1½ miles below the Humpback Bridge location. Access to such bridge on present road locations would require some users to travel more than the 1½ mile distance.

Some evidence concerning the status of bridge construction funds and amounts which might be raised if the mill levies were increased to the maximum permitted by law was received; however, there was not any evidence of the overall needs of Gage County for the maintenance and operation of its system of highways and bridges. The respondents had determined that there were not sufficient funds available for the rebuilding of Humpback Bridge.

The trial court found specifically that the decision of the respondents to dismantle and not rebuild Humpback Bridge was reached in the light of full information concerning the costs of repairing or replacing the bridge, the available funds, the overall

county needs and plans for roads generally in the county; and that the evidence did not show any unreasonable, arbitrary, or capricious conduct or abuse of discretion, but rather that said decision was reasonable under the circumstances, as they existed both at the time the decision was made and at the time of the application for the writ. This finding is based upon the trial court's consideration of the testimony and of the witnesses. A finding of fact in a mandamus proceeding will not be disturbed on appeal unless it is clearly wrong. State ex rel. Lackey v. Gering & Ft. Laramie Irr. Dist., 129 Neb. 48, 260 N. W. 568. The relators do not contend that the respondents acted arbitrarily, capriciously, or in bad faith. They do contend that the respondents and the trial court were under an absolute duty to repair or rebuild Humpback Bridge so long as the highway of which it was a part had not been relocated, abandoned, or vacated as provided by sections 39-1722 to 39-1726, R. R. S. 1943.

There is no question that an action in mandamus is an appropriate remedy to compel public officials to perform duties imposed on them by law, which exist at the time of the application for the writ and when such duties to act are clear. State ex rel. Herbert v. Anderson, 122 Neb. 738, 241 N. W. 545; State ex rel. Johnson v. Goble, 136 Neb. 242, 285 N. W. 569; State ex rel. Cashman v. Carmean, 138 Neb. 819, 295 N. W. 801. When the duty involves the exercise of judgment, a writ of mandamus will not extend to the control of the discretion of public officials. State ex rel. Davis v. Hoctor, 98 Neb. 15, 151 N. W. 923; State ex rel. Heil v. Jakubowski, 151 Neb. 471, 38 N. W. 2d 26.

With reference particularly to the duty of county boards regarding damaged bridges, we have held: "In determining the character of repairs to be made to bridges, and what bridges shall be repaired, when there are not sufficient funds for all, the court will

not control the discretion of county commissioners, unless there is a clear abuse of discretion." State ex rel. Ellis v. Switzer, 79 Neb. 78, 112 N. W. 297. Writs of mandamus have been granted to compel the building or restoration of bridges on public highways only when the court found that the decision of the county board against such building or restoration was capricious or arbitrary. State ex rel. Enerson v. County Commissioners, 102 Neb. 199, 166 N. W. 554; State ex rel. Draper v. Freese, 147 Neb. 147, 22 N. W. 2d 556.

Although the relators contend that sections 39-1722 to 39-1726, R. R. S. 1943, require that bridges on public highways must be constructed or kept in repair unless such public highways are vacated or abandoned, these sections do not support the contention. In section 39-1725, it is provided that the county board shall take such action "as in the judgment of the board the public good may require." Action under the Rural Mail Route Act, Chapter 39, article 10, R. R. S. 1943, depends upon the availability of sufficient funds to permit the program of improvement and maintenance of rural mail routes. Article 21 of Chapter 39, R. R. S. 1943, contemplates that the planning of highway improvements and the standards thereof shall be continuous; and nothing in that article indicates that the location of any highway or bridge shall be permanent, but rather subject to reevaluation and change.

Even though access to and from the relators' farms and travel throughout the vicinity may be less convenient than it was before the occurrence of the October 1973 flood, the record does not go to the extent of showing that such inconvenience is unreasonable or that respondents have discriminated against the relators. No one has been isolated nor has traffic to and from the area been cut off completely. The relators have not carried their burden of showing that the respondents have failed to perform a

clear duty to act. The trial court was correct in dissolving the alternative writ of mandamus and in dismissing the action.

AFFIRMED.