STATE OF NEBRASKA EX REL. KARYN M. STANSBERY
ET AL., APPELLANTS, V. PAUL SCHWASINGER ET AL.,
COUNTY COMMISSIONERS OF KEITH COUNTY, NEBRASKA,
APPELLEES.

289 N. W. 2d 506

Filed February 5, 1980. No. 42559.

Firmin Q. Feltz, for appellants.

Patrick B. Hays, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action by the relators, rural property owners, for a peremptory writ of mandamus to compel the respondents, county commissioners of Keith County, Nebraska, to pass a resolution creating a road improvement district under the provisions of the Rural Road Improvement District Act, sections 39-1638 to 39-1655, R. R. S. 1943, Laws 1963, c. 213, p. 679. The District Court denied the writ, finding that the creation of the district involved a discretionary function of the county commissioners. The relators have appealed to this court, contending that the statutory function of the county commissioners under the act is purely ministerial and that the writ should be issued. We affirm.

The act defines improvement as meaning, "the completed road and all work incidental thereto." § 39-1638 (3), R. R. S. 1943. Section 39-1639, R. R. S. 1943, authorizes the county to establish and construct new roads or extend existing roads, and to improve such roads in various ways which the statutes describe.

Two methods of initiating a road improvement district are provided for in the act. The board may initiate the matter by a proposed resolution, or it may be initiated by petition of 25 percent of the property owners in the proposed district. §§ 39-1639, 39-1640, R. R. S. 1943.

The proposed resolution must contain certain information. In the case of existing roads, the road must be designated. In case of establishing a new road, the location must be given. In addition, the proposed resolution must contain: (1) The general

description of the improvement and the kind of material, if it is to be surfaced; (2) a rough estimate of the total cost; (3) the proposed method of financing; and (4) the outer boundaries of the district in which it is proposed to levy special assessments. § 39-1639, R. R. S. 1943. If initiated by property owner petition, the petition must state the improvements desired and the property to be included. When the requisite petition is filed, the commissioners "shall prepare and propose the resolution as provided in section 39-1639." § 39-1640, R. R. S. 1943. The board must set a hearing date, set the matter for public hearing, and give notice thereof. § 39-1641, R. R. S. 1943.

The stipulation of the parties shows that notice was given and the public hearing was held; and that the county commissioners viewed the premises, determined the district was not in the public interest, and refused to enact the proposed resolution. No objections were made to the proposed resolution by any of the three property owners. The record shows the two relators and one other person own all the land in the proposed district.

Section 39-1642, R. R. S. 1943, provides that all interested persons shall be given an opportunity to be heard on any matter affecting the formation of the district. That statute also provides: "At or following said hearing the board may pass the resolution as proposed, or amend the resolution and pass the amended resolution. The amendments may, among other things, exclude any tracts included in the proposed resolution, or include additional property in the district, or otherwise change the boundaries of the proposed district." Section 39-1644, R. R. S. 1943, provides in part: "The county may obtain any property necessary for the improvement by gift, purchase or by eminent domain. The county may accept gifts or contributions to assist in the costs of the improvement. . . ."

Section 39-1647, R. R. S. 1943, provides that after acceptance of the improvement, costs are to be assessed against property owners especially benefited.

The record shows that, in this case, the landowner petitioners had caused a plat and map to be made and recorded. On the plat are designated a number of tracts of land of approximately 20 acres each. Meandering through the plat is a designated right-of-way. The surveyor's certificate on the plat refers to "an easement for access, 66 feet wide, through said land," and recites, "in accordance with Article 3, Section 2, revised, of the Keith County Zoning Regulations, this does not represent a subdivision to be governed by said regulations." There is nothing in the record to establish what the pertinent zoning regulations are. That plat, received in evidence, contains no dedication of right-of-way to the public and is not signed by the landowners. Neither does it bear any record of filing marks.

The owner of the greater part of the land within the proposed boundaries was the only witness to testify on behalf of the relators. She referred to the tracts on the plat as "twenty acre farms," and said: "Some of these roads are currently nearing completion but all of the roads that are proposed are laid out on the plat." She further stated the roads were constructed at the request of the witness and that there is more work to be done on the roads, saying: ". . . we are at several stages depending on which area of the roads you are talking about. There is about a mile and an eighth, approximately, that is graded and culverted and just waiting for little detail ditching and gravel. There is another one of approximately a mile that has been surveyed and staked and it will probably not be cut through until sometime later this fall. And then there is about a half of a mile, I guess, that is roughed-in and it is passable but it needs widening and ditching and a fjord built; all major things all of which have been

contracted for at this point. None of the burden of this work I am describing will fall on the county."

The owner stated it was her purpose to open the roads to the public. She described her purpose in filing the petition as follows: "Q Is it your purpose to make arrangements for the widening and reditching of the major roads and the redistricting [sic] thereof? A I prefer not to be perpetually burdened with the maintenance and snow clearance and that sort of thing. As far as bringing the roads up to county specifications, I have indicated that I intend to do that before the county is made responsible for the roads. Q Now then, has the fact there are no arrangements for the maintenance of the roads impeded the sale of the farms there? A Yes, it makes it very difficult for people to know what their property value is going to be; so yes, it does."

The resolution proposed by the landowner petitioners provided: "(4) The proposed method of financing is with private funds," and that the cost would be about $14,000. The petition described the boundaries of the district but made no mention of special assessments.

The proposed resolution of the county commissioners on which the public hearing was held differed in the following respects from that attached to the petition. It said: "(4) That the proposed method of financing the same is personal finances," and it described the boundaries of the district in which "it is proposed to levy special assessments."

One of the 20-acre tracts has been sold to a person not a party to this litigation. At the time of trial, that person was building a home on that tract which was nearing completion. One of the relators owns one tract. The relator witness owns the balance of the land. The proposed road serves only the several 20-acre tracts and no other land.

One of the county commissioners testified as follows: "Well, we tried to look at four different areas

as far as this Road Improvement District was concerned. First, we looked at the petition itself and there was no mention of the amount of improvements wanted. Next, we looked at the valuation of the area involved and in relation to any money that could be raised for such improvements. Then, we looked also at the area that it did involve as far as in relation to the other roads or how it would connect with any existing county roads. Q Did you go out and personally inspect the property? A Yes, we did."

The underlying rule governing the use of the writ of mandamus is: "The writ of mandamus may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. Though it may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it cannot control judicial discretion." § 25-2156, R. R. S. 1943.

We have recently said: "To warrant the issue of a peremptory writ of mandamus to compel the performance of a legal duty to act: (1) The duty must be imposed by law; (2) the duty must still exist at the time the writ is applied for; and (3) the duty to act must be clear." State ex rel. Blome v. Bridgeport Irr. Dist., *ante* p. 97, 286 N. W. 2d 426.

The Rural Road Improvement District Act clearly contemplates the construction of new public roads and extensions thereof, or the improvement of existing public roads by means of special assessment of the properties specially benefited. The powers, rights, and duties of counties pertaining to public roads are set forth in many different sections of the statutes. Section 39-1401 (2), R. R. S. 1943, states: "Public roads shall mean all roads within this state which have been laid out in pursuance of any law of this state, and which have not been vacated in pursuance of law, and all roads located and opened by

the county board of any county and traveled for more than ten years. . . ." There are various methods prescribed for laying out public roads, as well as statutes prescribing the duties of a county with reference to the maintenance and regulation of public roads. Sections 23-114.04 (1), 39-1402, 39-1403, 39-1405, 39-1410, 39-1649, 39-1710, 39-2003, and 31-727, R. R. S. 1943, among others.

Section 39-1501, R. R. S. 1943, provides in part: "The county board, in commissioner type counties having a county highway superintendent . . . shall: . . . (5) Maintain roads in unincorporated areas if such roads are dedicated to the public and are first improved to minimum standards as established by the county board. In a zoning area of a municipality such standards shall be the higher of those established either by the county or the municipality. Future improvements may be undertaken pursuant to the provisions of Chapter 39, article 16."

Chapter 39, article 16, R. R. S. 1943, provides three separate methods for improving public roads through improvement districts. Two of these methods contemplate special assessments, one of the latter being the method at issue in this case.

The testimony of the relator who appeared as a witness clearly shows that the relators' purpose is not to create an improvement district, but to require the county to maintain roads which are not yet public. The plat referred to in the evidence contains no dedication of the roads to the public use and, as earlier mentioned, was not executed by the owners of the land. The owners have not delivered or even tendered to the county a deed to the proposed right-of-way, nor has there been an implied dedication and acceptance. The act authorizes, but does not require, the county to acquire the right-of-way by eminent domain. § 39-1644, R. R. S. 1943.

A governmental subdivision has no authority to improve roads and levy special assessments except

for public roads to which it has title. Metropolitan Life Ins. Co. v. SID No. 222, 204 Neb. 350, 281 N. W. 2d 922; City of McCook v. Red Willow County, 133 Neb. 380, 275 N. W. 396. See, also, Village of Maxwell v. Booth, 161 Neb. 300, 73 N. W. 2d 177.

It is apparent that when the act refers to roads it means public roads. § 39-1639, R. R. S. 1943. It contemplates that the county shall acquire title to the right-of-way in some manner. § 39-1644, R. R. S. 1943. It provides that when the road improvements "have been completed and accepted," they shall constitute a part of the county road system and be maintained by the county. § 39-1649, R. R. S. 1943. The procedures under the act are not in and of themselves a means by which the county acquires title, nor by which the road becomes public.

The application for the writ must fail for three reasons: (1) The relators' proof does not bring them within the provisions of the act. (2) Their proof indicates they want road maintenance rather than road improvements, but there is no public road which qualifies for public maintenance. (3) The provisions of the act and related statutes, as we read them, do not impose upon the board of county commissioners a mandatory ministerial duty to establish and construct new roads even upon petition. The provision for acquisition of right-of-way contains no mandatory language. The fact that a public hearing is required and that estimated costs of improvements are to be considered are also indications that the county commissioners are to exercise discretion and judgment. The Legislature would seem to have left it to the judgment of the county commissioners to determine whether the costs would be disproportionate to special benefits.

The term "improvement," as defined in section 39-1638, R. R. S. 1943, when read together with section 39-1645, R. R. S. 1943, which makes provision for paying "cost of the improvement as the work prog-

gresses," does not appear to include right-of-way. It further does not appear that the cost of the acquisition of right-of-way is part of the cost to be paid by special assessments. The expenditure of funds for right-of-way is clearly discretionary and obviously the board would have to consider availability of funds in determining whether to establish new roads. The entire tenor of the act fits the existing statutory pattern which, unless specifically otherwise provided, leaves the decision as to the opening and improvement of roads to the county commissioners. See, Cummins v. Sheridan County, 95 Neb. 459, 145 N. W. 975; State ex rel. Goossen v. Board of Supervisors, 198 Neb. 9, 251 N. W. 2d 655; State ex rel. Weinberger v. Gormley, 155 Neb. 242, 51 N. W. 2d 343; Kunz v. Bornemeier, 170 Neb. 463, 102 N. W. 2d 842; 55 C. J. S., Mandamus, § 177, pp. 335, 336. We hold that the ultimate decision whether to acquire or accept right-of-way and to establish and/or improve a new road under the provisions of sections 39-1638 to 39-1655, R. R. S. 1943, is vested in the sound discretion of the county commissioners and the exercise of their authority in this respect may not be compelled by mandamus.

The county commissioners did perform the duty which was mandatory under the act, i.e., they proposed a resolution and held a public hearing thereon.

AFFIRMED.

BOSLAUGH, J., concurs in result.