STATE, EX REL. SCOTT CASHMAN, APPELLEE, v. HEMEAN CARMEAN, MAYOR, APPELLANT.

295 N. W. 801

FILED JANUARY 10, 1941.  No. 30932.

*Edwin D. Crites,* for appellant.

*Porter & Porter* and *G. E. Price, contra.*

Heard before SIMMONS, C. J., EBERLY, MESSMORE and YEAGER, JJ., and LANDIS and MUNDAY, District Judges.

MESSMORE, J.

This is an action brought in the name of the state of Nebraska, upon the relation of an elector and taxpayer, for a writ of mandamus to require the respondent mayor, in his official capacity, to certify to the governor of the state that the city of Chadron has decreased in population to a city of less than 5,000 and more than 1,000 inhabitants, as ascertained and officially promulgated by the census and enumeration taken under and by authority of the United States government in the year 1930 (in compliance with section 17-162, Comp. St. Supp. 1939). The relator's petition sets forth the foregoing contention as the basis for the issuance of the writ. The respondent's answer contains a general denial and alleges several affirmative defenses, which will be discussed in the opinion, in connection with assignments of error raised. The trial court granted a peremptory writ of mandamus. From this order the respondent appeals.

. The title to House Roll 231 (Laws 1933, ch. 112; now Comp. St. Supp. 1939, secs. 17-162 to 17-166), here involved, as well as the act itself, discloses that its sole purpose was to correct the classification of cities of the first class when their population decreased to a number less than 5,000 and more than 1,000 inhabitants.

Section 17-162, Comp. St. Supp. 1939, provides: "Whenever any city of the first class, having not more than five thousand and less than twenty-five thousand inhabitants, shall have decreased in population, until it shall have attained a population of less than five thousand inhabitants, and more than one thousand inhabitants, *as ascertained and officially promulgated by the census return and enumeration taken under the authority of the United States in the year 1930, or as hereafter ascertained and officially promulgated by the census, enumeration and return taken by the United States, or by the State of Nebraska, or by the authority of the Mayor and City Council of any such city, the Mayor of any such city may certify such fact to the Governor of the State of Nebraska,* who, upon the filing of such a certificate, shall by proclamation so declare, and shall declare such city to have become a city of the second class * * * and thereafter such city shall be governed by the provisions of the statutes of the State of Nebraska applicable to such cities of the second class, now, or hereafter in force. Upon such proclamation being made by the Governor, each and every officer of such city shall, within thirty days thereafter, qualify and give bond as provided by the statutes of the State of Nebraska in cases of cities of the second class: Provided, that in any city which may hereafter become a city of the second class, having been a city of the first class, any councilman, whose term shall extend by reason of his prior election under the provisions governing cities of the first class, through another year or years, shall continue to hold his office as councilman from the ward in which he is a resident, as if elected for the same term under the statutes of the State of Nebraska governing cities of the second class." (Italics ours.)

Section 17-163, Comp. St. Supp. 1939, provides for the continuation of government until reorganization; section 17-164, for the wards, number, how determined; section 17-165, as to council, number and qualifications; section 17-166, as to ordinances, rules and regulations to remain in effect. It is definitely established that the federal census of 1930 disclosed the population of the city of Chadron to be 4,606 inhabitants, and there is no dispute with reference to this enumeration.

The Constitution of Nebraska does not provide for classification of cities as to different classes. The classification of cities and prescribing the government thereof are purely matters of legislative control, and the classification is made in accordance with the population. See *State v. Babcock*, 25 Neb. 709, 41 N. W. 654; 43 C. J. 80, 103; *State v. District Court of Ramsey County*, 84 Minn. 377, 87 N. W. 942; *Town of London v. Brown*, 183 Ky. 63, 208 S. W. 317. The transfer of a city from one class to another is a matter of legislative control. See *State v. Northup*, 79 Neb. 822, 113 N. W. 540. Under the provisions of section 1, art. 1, ch. 14, Comp. St. 1895, each village in this state, containing the population required by the statute, becomes a city of the second class, without any action being taken on the part of the municipality. See, also, *Osborn v. Village of Oakland*, 49 Neb. 340, 68 N. W. 506.

Section 17-162, Comp. St. Supp. 1939, imposes a positive duty and obligation upon the mayor of a city of the first class, having a population of more than 5,000 and less than 25,000. When, within the purview of this section, it is definitely shown that the city possesses a population of less than 5,000 inhabitants, the mayor of the city may certify such fact to the governor, so that he may issue a proclamation in conformity therewith. The word "may" appears in said section in the following manner: "may certify such fact to the Governor of the State of Nebraska." The intent of the legislature must be gathered from the whole act. In *Doane v. City of Omaha*, 58 Neb. 815, 80 N. W. 54, this court held: "The word 'may,' when used in a statute or en-

actment to impose a duty or delegate a power, the performance of which involves the protection of public or private interests, will be read as 'must,' and construed as mandatory." See, also, *People v. Commissioners of Buffalo County*, 4 Neb. 150; *Mooney v. Drainage District*, 126 Neb. 219, 252 N. W. 910; *State v. Bartholomew*, 103 Conn. 607, 132 Atl. 30.

Since the provisions of section 17-162, Comp. St. Supp. 1939, impose upon the mayor a mandatory duty, the question arises as to the propriety of an action in mandamus to compel the performance of such a duty. The relator seeks to require the mayor to conform to the provisions of said statute by issuing a certificate to the governor, as required therein. There is no allegation of damages or establishment of a right or any other form of relief, but an action to compel the mayor to do what the statutes of Nebraska require him to do. We need not define mandamus or the nature or object of the writ, to determine its applicability to the case at bar.

This court has held: "Mandamus may issue against a public officer to compel him to act, when (1) the duty is imposed on him by law, (2) the duty still exists at the time the writ is applied for, and (3) the duty to act is clear." *State v. Anderson*, 122 Neb. 738, 241 N. W. 545.

Section 20-2156, Comp. St. 1929, provides in part: "The writ of mandamus may be issued to any * * * person (mayor), to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."

Respondent contends that the statute of limitations applies, citing *State v. School District*, 30 Neb. 520, 46 N. W. 613, and *State v. King*, 34 Neb. 196, 51 N. W. 754. The former case may be summed up by the following language in the opinion (p. 528) : "Mr. J. L. High, in his important work on Extraordinary Remedies, sec. 355, lays it down that, in cases where the aid of *mandamus* is sought to compel public officers to draw their warrant for the payment of money 'the right to relief, in this class of cases, may be

barred by the statute of limitations.' That we believe to be this case, and we hold broadly that our statute of limitations, although confined in terms, applies to all claims that may be made the ground of action at law in whatever form they may be presented; the same falling within the meaning and purport of section 16 of the Code, when not falling within any other." The case of *State v. King, supra,* was an action in mandamus to compel respondent to pay into the treasury a sum of money alleged to be due from respondent as the former treasurer of the county, and the action was brought more than four years from the time the right to the writ accrued. The statute of limitations was applied. The rule stated in *State v. School District, supra,* prevailed. An entirely different situation exists in the instant case. See, also, *State v. Bartholomew, supra,* wherein the court held:

"A writ of mandamus may issue when the duty which the court is asked to enforce is the performance of some precise, definite act in relation to which the respondent has no discretion, and when the right of the party applying is clear and he is without other adequate and specific remedy."

Mandamus will lie to compel a public officer to perform a ministerial duty, and the duty of the mayor in the instant case is purely ministerial. See *State v. Thayer,* 31 Neb. 82, 47 N. W. 704; *State v. Bartholomew, supra;* Maxwell, Pl. & Pr. (1889) p. 735.

Again referring to section 17-162, Comp. St. Supp. 1939, there is a definite and distinctive duty imposed on the mayor of the city of Chadron. This duty is a continuing one, devolving upon the mayor in his official capacity. It is the duty of the person who occupies the office and is continued from one mayor to another. We are convinced that the distinction between the cited cases and the instant case is apparent.

While the facts in the case of *Stoddard v. Keefe,* 278 Ill. 512, 116 N. E. 193, are not analogous to those in the instant case, the following principle of law announced therein is applicable: The bar of the statute of limitations, acquies-

cense or laches cannot be availed of to defeat a continuous duty imposed, in the absence of special circumstances showing it would be unjust or inequitable to grant the relief asked.

Respondent makes reference to section 16-101, Comp. St. 1929, enacted in 1901 and still intact, which provides: "All cities having more than five thousand and less than twenty-five thousand inhabitants, as ascertained and officially promulgated by the census return and enumeration taken under the authority of the laws of the United States in the year 1900, or as may be hereafter ascertained and officially promulgated by the United States or under the authority of the State of Nebraska or by the authority of the *mayor* and *city council* of any such city, shall be governed by the provisions of this chapter and be known as cities of the first class," etc. (Italics ours.)—and to section 16-102, Comp. St. 1929, providing: "Whenever any city of the second class shall have attained a population of more than five thousand inhabitants as provided by the next preceding section, the mayor of such city may certify such fact to the governor," etc.

The contention is that, having attained the corporate existence of a city of the first class, as far as section 16-101, *supra,* is concerned, the city of Chadron would remain in that class indefinitely, because said section of the statute does not provide for retrogression to the status of a city of the second class. It is further contended that the duty of certification to the governor is a joint one by authority of the mayor and city council; that in the instant case the city council did not, by ordinance or resolution, provide for the certification, as contained in section 17-162, Comp. St. Supp. 1939.

Our attention is further called to section 16-201, Comp. St. 1929, defining the general powers of a city of the first class, and to section 16-202, Comp. St. 1929, providing that these powers shall be exercised by the mayor and city council of such city (i. e. that the statute here under consideration, section 17-162, ignores the city council entirely) ; further, that section 16-308, Comp. St. 1929, prescribes the

duties of the mayor of a city, and section 16-309, Comp. St. 1929, the powers of the mayor and of the council. Respondent contends, from an analysis of the sections heretofore referred to, that the intent of the city charter contemplates that the mayor acts only by authority of the city council, acting by ordinance or resolution; that the city council shall have discretion in the matter. This would meet respondent's contention of a misjoinder of parties defendant and a defect of parties defendant, and lack of jurisdiction of the court to determine the case.

Section 16-101, Comp. St. 1929, is not in conflict with section 17-162, Comp. St. Supp. 1939, in any particular. The former refers to and designates when a city shall become a city of the first class. The city of Chadron became such a city in March, 1919. Section 17-162 classifies a city of the second class and relates the circumstances under which the classification is made. Obviously, both sections are separate and distinct, each from the other. Section 17-162 makes no requirement for action on the part of the city council by ordinance or resolution, but places a positive, definite and mandatory duty upon the mayor, and he exercises no discretion in the matter. The council cannot exercise such discretion, as it has no part in the certification, as required by the act. The other sections of the statute, cited above, are pertinent to the classification of cities, but they do not conflict in any manner with section 17-162, *supra*. If the contention of the respondent should prevail, it would be exceedingly difficult for a city of the first class to lose its status as such until and unless the city council and mayor should decide, by ordinance or resolution, to classify the city in a separate class. Section 17-162, *supra*, simplifies the classification. The object is to benefit the taxpayer by a reduced burden in governmental expenses.

We conclude that the respondent's position, under the circumstances, is not tenable. Other assignments of error need not be considered.

For the reasons given in this opinion, the judgment of the trial court is

AFFIRMED.